UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COREY DEMARION MCCULLOUGH,

    Petitioner,

v.                                            Case No. 2:10-cv-86
                                               HON. R. ALLAN EDGAR

GREG McQUIGGIN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Corey Demarion McCullough filed this petition for writ of habeas corpus challenging his conviction for second degree murder and felony firearm. Petitioner received a sentence of 60 to 99 years for his second degree murder conviction and two years for his felony firearm conviction. Petitioner was convicted of second degree murder which occurred during a marijuana and heroin drug transaction. The victim was a marijuana distributer and Petitioner and his co-defendants were involved in trading heroin for marijuana. During the transaction, the victim was shot with two separate firearms and killed. Petitioner was tried with one co-defendant. Petitioner's other co-defendant received a separate trial. Petitioner appealed his conviction to the Michigan Court of Appeals. The Michigan Court of Appeals affirmed the conviction on August 12, 2008. The Michigan Supreme Court denied leave to appeal on April 8, 2009. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner raises the following claims in this petition:

I. Petitioner was denied due process and a fair trial where the trial court excused the lone hold out juror during deliberations, without proper inquiry on the record.

II. Petitioner was denied due process and a fair trial due to multiple prejudicial irregularities.

III. Petitioner's convictions must be reversed due to prosecutorial misconduct.

IV. Petitioner was denied his constitutional right to effective assistance of trial counsel for his defense.

V. The trial court erred in admitting the guns found during the search of a co-defendant's house into evidence at petitioner's trial.

VI. The trial court erred in admitting "expert" testimony on how drug dealers normally ransack a house for consideration by the jury.

VII. The trial court erred in allowing all testimony regarding Brandon O'Connor.

VIII. The combined effect of the multiple errors in petitioner's trial denied petitioner his federal constitutional rights to due process and a fair trial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Respondent argues that Petitioner's claims that juror 14 should have been removed, that the instruction for a deadlocked juror was unconstitutional, that the trial court erred by having a conversation with the jury foreman, and that the prosecutor committed misconduct are procedurally defaulted. The Michigan Court of Appeals concluded as to each of these issues that Petitioner failed to make a timely objection or waived the issue at trial. Accordingly, the Michigan Court of Appeals reviewed these claims under a plain error review and found no plain error. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

As cause for his procedural default, Petitioner asserts that his trial counsel was ineffective for failing to object during trial on these issues. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner has not shown that counsel made an error that could have changed the outcome of the case if a timely objection was made on each of these issues. The Michigan Court of Appeals explained that the court properly considered whether juror 14 should be excused:

> We conclude that McCullough failed to establish that Juror 14's conversation with his mechanic created a real and substantial possibility that extraneous facts not introduced in evidence could have affected the jury's verdict. The trial court conducted an examination by questioning Juror 14 in regard to his conversation with his mechanic. Defense counsel's concern was that the mechanic mentioned names in attempting to discuss the case with Juror 14.

> However, Juror 14 indicated that the mechanic did not use names to reference the offender(s), but indicated that the mechanic stated that one of the alleged offenders was from Ada. However, as the trial court noted, none of the defendants or Johnigan was from Ada. Significantly, Juror 14 expressed that nothing transpired that would influence his judgment or prevent him from rendering a fair and impartial verdict.

Michigan Court of Appeals' Opinion, Docket #48, at 10.

Similarly, the Michigan Court of Appeals properly rejected Petitioner's claim that the deadlock jury instruction was coercive or applied to one particular juror. The court had received a note from the jury that indicated that the jury was at an impasse and the jury wanted to know what could be discussed when the entire jury was not present in the jury room. The court answered the question stating that nothing could be discussed outside any juror's presence and that every juror needed to participate in the process. The court then gave the standard deadlock jury instruction. As the Michigan Court of Appeals decided, the instruction was not coercive. Defense counsel indicated that he had no objection to the court's instructions.

The Michigan Court of Appeals also addressed and rejected Petitioner's claim regarding the court's conversation or lack of conversation with Juror 14. The Michigan Court of Appeals stated:

> McCullough next argues that trial court erred in having direct communication with Juror 14. McCullough specifically claims that "[w]hen the Judge communicated to defense counsel about the jury's foreperson's note, he indicated that the foreperson had approached him directly: 'There's no name on it, but it's generically signed, 'Foreman McCullough jury,' And I have no reason to doubt that's where it came from, since it came directly from the individual to my hand.' While the Judge read the note from the Foreperson to all counsel on record, it will never be known what was discussed off the record." There was no objection to the trial court's decision on this issue. This Court reviews unpreserved claims of appeal for plain error affecting defendant's substantial rights.

> McCullough's claim must be rejected because, as he admits above, there is no evidence of a communication between Juror 14 and the trial court. The record only indicates that Juror 14 gave the trial court the note, and that the trial court read the note into the record with all counsel present. There was no allegation of improper conduct in the lower court, and thus, the record cannot support McCullough's claim that he was prejudiced by the trial court's alleged communication with Juror 14. Accordingly, McCullough has failed to establish plain error affecting his substantial rights.

Michigan Court of Appeals' Opinion, Docket #48, at 11.

Petitioner also cannot support his procedurally defaulted prosecutorial misconduct claims. Petitioner claimed the prosecutor committed misconduct during the examination of witness Thompson who was called as a witness by the prosecution. Petitioner claims that the prosecutor introduced hearsay evidence by using a videotape of witness Thompson's police interview. Petitioner also complained about a question posed to a police officer regarding the content of a telephone conversation. The trial judge interjected and gave a curative explanation of the question. Petitioner must show that the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).[1] The Michigan Court of Appeals rejected each of Petitioner's

---

[1] To the extent that Petitioner may be attempting to raise other prosecutorial misconduct claims, it is the opinion of the undersigned that those alleged errors failed to violate Petitioner's constitutional rights.

prosecutorial misconduct claims on plain error review. It is clear that Petitioner cannot show prosecutorial misconduct in this case. Further, defense counsel's failure to object to each of these issues cannot constitute cause to excuse Petitioner's procedural default.

Petitioner claims that his right to a fair jury trial was violated when the trial court excused Juror 13 during deliberations. Petitioner claims that the court failed to question Juror 13 before dismissing her from the jury. Juror 13 is asserted to be the only juror that would not find Petitioner guilty. She allegedly refused to participate in the process, read magazines during the juror deliberation, and when someone attempted to speak to her she would simply tell them to shut-up. On the morning that she was excused from the jury, she had telephoned the court that she would be absent because her children were sick and she was not feeling well and was going to see a doctor that day. Petitioner argues that the court replaced her simply because she was the lone holdout. Juror 13 was replaced by an alternate juror. Petitioner was found guilty the next day. The Michigan Court of Appeals rejected Petitioner's claims and explained that the court had authority to replace a juror during deliberations:

> While [*People v Tate*, 244 Mich App 553, 624 NW2d 524 (2001), and *People v Dry Land Marina*, Inc., 175 Mich App 322, 437 NW2d 391 (1989)] address replacement of deliberating jurors, they did not address jurors unwilling to serve. Juror 13, and not the trial court, requested an alternate replace her, and thus, it cannot be said that the trial court removed a willing juror. Indeed, the trial court here protected the parties' right [to] a fair and impartial jury "by removing a juror unable or unwilling to cooperate." *Tate, supra* at 562. Also important is that *Tate* and *Dry Land Marina* did not rely on a court rule expressly proving [sic] for the replacement of deliberating jurors. The court rule applicable here sanctions the replacement of deliberating jurors, and attempts to marginalize prejudice by requiring the trial court to "instruct the jury to begin its deliberations anew" as does MCR 6.411. Because juries are presumed to follow the trial court's instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), MCR 6.411 effectively preserves defendant's right to a unanimous verdict.

McCullough further maintains that the trial court should have had summoned Juror 13 and conducted a hearing in regard to her claimed illness and refusal to deliberate. In support of this option, McCullough notes that several federal cases have indicated that, "[w]hen possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment." *US v Shackelford*, 777 F2d 1141, 1145 (6th Cir. 1985). However, the cases cited by McCullough involve extrinsic influences on a juror, such as threatening phone calls, conversing with a defendant and reading news articles. *Id*. Here, McCullough has not alleged that Juror 13 was exposed to any extrinsic influence; rather, personal reasons underlie her inability or unwillingness to rejoin the deliberating jury.

Nonetheless, there is some support for McCullough's claim that the trial court was required to conduct an evidentiary hearing. In *Riggs v State*, 809 NE2d 322 (Ind 2004), the Indiana Supreme Court addressed the replacement of deliberating jurors under an Indiana court rule similar to MCR 2.114. In *Riggs*, the jury had deliberated for four hours when the trial court received a note from the foreman, indicating, "'We have a juror that's become belligerent, not willing to discuss the issues onhand [sic] pertaining to the case. Do we have any recourse?'" *Id*. at 324. The trial court then, on the record, questioned the jury foreman about the note and essentially learned "that the [allegedly belligerent juror] has reached an opinion and refuses now to budge from that." *Id*. at 325. The trial court excused the jury foreman, discussing the matter with counsel, and re-called the jury foreman, who indicated that, the "particular juror is not willing to work with any of the other jurors to talk out the various different charges." *Id*. "The State then reiterated its request that the juror be replaced, and [the defendant] responded that the record was not sufficiently clear to warrant the removal of a juror."

The trial court then received another note from the allegedly belligerent juror requesting he see the trial court. *Riggs, supra* at 326. Before the trial court the juror indicated that "[t]he head juror accused me of trying to defend the defendant and I'm not going to take that." *Id*. Further, that "I'm trying to give a fair and impartial determination to this evidence and to this Court." *Id*. The trial court dismissed the juror, holding:

> First of all the Court did in fact observe the demeanor of the juror and listened to his words to the point that the Court is troubled if it sends this juror back to deliberate . . . . I am fearful of the events that would

> occur back there .... The Court will also ... allow
> any party to examine the witnesses ... including the
> bailiff ... [that] delivered this note and appeared to be
> in somewhat of a panic, that they were screaming at
> each other.
>
> The Indiana Supreme Court reversed, holding that the "record is not sufficient to support removal of a juror after deliberations have begun." *Riggs, supra* at 327. The Indiana Supreme Court specifically mentioned that, "there was no interview of [the juror] regarding the alleged threats, and no interview of the other jurors to establish fear of violence."
>
> There are several important differences between *Riggs* and the instant case. Most important, Juror 13, and not the trial court, requested an alternate replace her, and thus, the trial court did not remove a willing juror. Further, the applicable Indiana court rule, In St Trial P Rule 47(B), does not require the trial court to "instruct the jury to begin its deliberations anew" as does MCR 6.411. Thus, under the circumstances, McCullough has failed to show any basis to conduct an evidentiary hearing.
>
> Several options were available to the trial court to address Juror 13's apparent inability or unwillingness to continue serving as a juror. The trial court accepted Juror 13's claim that she and her children had taken ill. The trial court noted that Juror 13 sounded weak and frail, and was later informed that Juror 13 indicated she was going to see a doctor. The trial court considered its options and elected to replace Juror 13 with an alternate juror. We cannot conclude that the trial court's decision to replace Juror 13 was an abuse its [sic] discretion. MCR 6.411 expressly sanctions replacement of a deliberating juror with an alternate, and thus, replacement of Juror 13 was not unprincipled. And while we can readily imagine instances in which MCR 6.411 can be abused, we cannot conclude under the facts presented in this case that the trial court abused its discretion in replacing Juror 13.

Michigan Court of Appeals' Opinion, Docket #48, at 13-15.

Petitioner cites *United States v. Shackleford*, 777 F.2d 1141 (6th Cir. 1985), as authority that the court is required to investigate a juror's misconduct before dismissing a juror. In this case, the trial court did conduct an investigation by questioning the jury foreman, but the court

did not question the dismissed juror. It was, in fact, the dismissed juror's absence that lead to her dismissal from the jury. The Sixth Circuit stated:

> The sixth amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a "panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment. *See, e.g., United States v. Griffith*, 756 F.2d 1244, 1252 (6th Cir.1985); *United States v. Pennell*, 737 F.2d 521, 532-33 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Corbin*, 590 F.2d 398, 400 (1st Cir.1979). Since the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion. *See, e.g., United States v. Soulard*, 730 F.2d 1292, 1305 (9th Cir.1984); *United States v. Halbert*, 712 F.2d 388, 389 (9th Cir.1983) cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *United States v. Chiantese*, 582 F.2d 974, 978-79 (5th Cir.1978); *United States v. Hendrix*, 549 F.2d 1225, 1227-29 and n. 2 (9th Cir.1977).
>
> A trial court's refusal to permit an evidentiary hearing may constitute abuse of discretion when the alleged jury misconduct involves extrinsic influences. *See United States v. Herring*, 568 F.2d 1099 (5th Cir.1978). Under the facts of this case, however, extrinsic influence was not demonstrated. Defense counsel's interview notes of jurors reflect that the juror who left the jury room to speak with his wife with court authorization had voted for guilt from the beginning of deliberations. Since that juror never wavered in his decision, he did not obtain extraneous information from his wife, or any other source, relating to the case that in any way prejudiced the defendants.

*Id.* at 1145.

Petitioner urges the court to adopt the findings of the dissenting Michigan Court of Appeals' decision which Petitioner characterizes as in line with Supreme Court precedent. It is clear that the dissenting opinion is based upon the fact that Juror 13 was the lone hold out juror. However, that fact alone cannot be the basis for determining whether the trial court erred in dismissing the

juror. It is clear that the trial court had the authority to remove the juror and nothing in the record supports the conclusion that the removal was based upon the juror's view of the evidence in this case. Petitioner has failed to show that his constitutional rights were violated by the removal of Juror 13. This court cannot grant a habeas petition when the lower court's ruling is reasonable based upon Supreme Court law and the facts of the case, even if another outcome might arguably be considered reasonable. Accordingly, it is the opinion of the undersigned that the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the trial court committed error by seating an alternate juror. The Michigan Court of Appeals denied this claim explaining:

> McCullough next claims that the trial court "abused its discretion by seating an alternate juror who had been excused three days earlier without being properly preserved from taint." Defense counsel specifically objected to the alternate juror, stating:
>
>> Finally, the court rules require that alternate jurors can be replaced or the court can replace jurors if it's an appropriate reason. Again, as I said, I don't think it's appropriate, and secondly, [MCR 6.411] says if the jurors have been retained. These jurors have not been retained. They were released from service last Tuesday, which was four days ago, three days ago.
>
> The trial court excused the alternate juror and failed to instruct her not to "discuss the case with any other person until the jury completes its deliberations and is discharged." Rather, the trial court indicated that she could "go about [her] business." Thus, the trial court did not comply with MCR 6.411.
>
> Any error in failing to comply with MCR 6.411 is plainly harmless. Upon recalling the alternate juror, the trial court conducted voir dire

to determine if the alternate juror had discussed the case with anyone. McCullough's counsel was present at the hearing, and did not elicit evidence suggesting that the alternate juror discussed the case since being excused. Accordingly, no harm can be attributed to the trial court's failure to properly instruct the alternate juror, and McCullough is not entitled to relief.

Michigan Court of Appeals' Opinion, Docket #48, at 15-16.

Petitioner cannot show that there was a violation of his constitutional rights when the court seated the alternate juror. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Similarly, Petitioner's ineffective assistance of counsel claims lack merit. The Michigan Court of Appeals stated:

### 1. Failure to Object

McCullough claims "trial counsel repeatedly failed to register appropriate objections to inadmissible evidence offered by the prosecution." However, in regard to this issue, McCullough fails to identify any instances in which defense counsel failed to object. A party may not leave it to this Court to search for the factual basis to sustain or reject his position, but must support factual statements with specific references to the record. *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001). Moreover, we rejected McCullough's individual claims of prosecutorial misconduct and find no error. Thus, McCullough's claim that counsel's failure to object to misconduct by the prosecutor is without merit.

### 2. Failure to Challenge Sufficiency of Evidence

McCullough next claims that "defense counsel failed to challenge the sufficiency of the evidence introduced at trial." This claim is without merit. As McCullough notes, "the issue of sufficiency of the evidence would have been properly preserved for appellate review even if the

trial court summarily denied both motions." Because McCullough can challenge the sufficiency of evidence on appeal, though he does not, defense counsel's failure to challenge the sufficiency of evidence at trial cannot not [sic] considered prejudicial.

### 3. Failure to Object to Juror 14

McCullough next claims that "defense counsel did not object to Juror [14] remaining on the jury, even after his initial misconduct was disclosed." Defendant "must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair and unreliable. *Pickens, supra* at 312. Here, McCullough speculates that Juror 14 received misinformation from his mechanic, but fails to identify the content of the misinformation. McCullough again has failed to establish prejudice.

Michigan Court of Appeals' Opinion, Docket #48, at 19.

In the opinion of the undersigned, Petitioner cannot show that the Michigan Court of Appeals' decision denying his ineffective assistance of counsel claims was unreasonable.

Petitioner claims that the trial court erred in admitting into evidence guns found during the search of a co-defendant's house, expert testimony on how drugs dealers normally ransack a house, and all the testimony regarding Brandon O'Conner. The Michigan Court of Appeals rejected each of these claims:

### D. Evidentiary Decisions

"The decision whether to admit evidence is within a trial court's discretion." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). An evidentiary error does not merit reversal in a criminal case unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *People v Smith*, 243 Mich App 657, 680; 625 NW2d 46 (2000).

### 1. Admission of the Weapon Cache

McCullough argues that the evidence of assault weapons found in Johnigan's home was improperly admitted because none of the assault weapons were used to kill French.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

The trial court properly admitted the assault weapons found at Johnigan's home because it tended to establish McCullough's involvement in the robbery and murder of French. Testimony at trial showed that Gordon had recently met French, and that Gordon knew French had a large quantity of marijuana. Gordon and McCullough talked more frequently after Gordon met French. On February 3, 2003, Johnson gave Gordon French's phone number to "highlight" a business deal. Shortly after, McCullough called Johnigan and requested that he travel from Grand Rapids to Detroit to acquire heroin for French, who McCullough did not know. In Grand Rapids, Johnigan followed McCullough and Gordon to French's house, where Johnigan admittedly shot and killed French. One of the guns used to kill French was found in Johnigan's home. The trial court properly found that Johnigan's large cache of weapons tended to show that McCullough recruited Johnigan, a hitman, to kill French, or at least, to help him rob French through threat of deadly force.

    2. Testimony that Drug Dealers Ransacked French's House

The trial court did not commit error requiring reversal in admitting testimony that drug dealers searched French's home.

This Court reviews for an abuse of discretion the decision whether to admit evidence. *Katt, supra*. An evidentiary error does not merit reversal in a criminal case unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *Smith, supra*.

McCullough claims that the trial court improperly allowed Detective Patrick Frederick to testify as an expert in regard to how drug dealers search a house to find drugs and money. However, at trial, there was

no dispute that French's home was ransacked and all agreed that it was searched for drugs and money. Indeed, Johnigan testified that he searched French's home for drugs and money. Thus, there is little probability that any error was outcome determinative, and reversal is not required.

### 3. Testimony of Brandon O'Connor

McCullough argues that the trial court committed error in admitting O'Connor's testimony that suggested Gordon had robbed him in a manner similar to the instant case to establish a scheme. At trial, Gordon denied taking part in the robbery. Before both juries, the prosecutor sought to impeach Gordon's testimony with police reports indicating that Gordon had previously committed robberies using duct tape to secure the victims. McCullough's counsel objected based on relevance as to McCullough, but the trial court overruled the objection, finding the testimony relates to Gordon's credibility. The prosecutor asked Gordon whether he bound French with duct tape, and when Gordon denied it, the prosecutor asked whether he knew O'Connor, the person Gordon allegedly bound with duct tape and robbed in 1999. Gordon denied robbing O'Connor.

The prosecution then called O'Connor as a rebuttal witness to testify that Gordon had asked him to buy a television, and then robbed him. O'Connor reluctantly admitted that, in 1999, he was robbed by a person named Pee-Wee (Gordon's alias), who bound him in duct tape. He also admitted that the person that robbed him was Marcello Sylvester's cousin. Gordon is Sylvester's cousin. O'Connor also admitted that the person who robbed him had fathered a child to Ms. Crawford, which Gordon did. However, O'Connor denied that Gordon was the person who robbed him.

Even though O'Connor denied that Gordon had robbed him, he admitted that he previously indicated that the person who robbed him was Marcello Sylvester's cousin and had fathered a child with Crawford. The prosecutor essentially impeached O'Connor's failure to identify Gordon as the robber by highlighting facts that make it improbable that Gordon was not the robber. Evidence that the robber was Marcello Sylvester's cousin and had fathered a child with Crawford is sufficient to allow [a] reasonable juror to conclude that Gordon had robbed O'Connor, despite O'Connor's protestations that Gordon did not rob him. Thus, the trial court did not abuse its discretion in allowing the prosecution to impeach Gordon's denial of involvement with evidence that he previously had used duct tape to

- 17 -

> commit robberies. A decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v Meshell*, 265 Mich App 616, 637; 696 NW2d 754 (2005).

Michigan Court of Appeals' Opinion, Docket #48, at 20-21.

Petitioner contends that the trial court abused its discretion when it admitted this testimony where the probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly

significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

In the opinion of the undersigned, Petitioner's claims should be dismissed. Further, to the extent that Petitioner claims that the cumulative effect of these errors entitle him habeas corpus relief, Petitioner's claims should be denied.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could

not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: April 10, 2013